IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDY SPENCER,  )
    Plaintiff,  )
       ) **District Judge McLaughlin**
       ) **Magistrate Judge Baxter**
v.  )
       ) **08-cv-329Erie**
MICHAEL J. ASTRUE,  )
COMMISSIONER OF SOCIAL SECURITY,  )
    Defendant.  )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment (*Document No. 11*) be denied, that the Defendant's Motion for Summary Judgment (*Document No. 16*) be granted, and that the administrative decision of the Commissioner of Social Security ("Commissioner") be affirmed.

II. **REPORT**

    A. **Procedural History**

Plaintiff Randy Spencer ("Spencer") commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner's decision finding that he was overpaid $47,594.70 because he had engaged in substantial gainful activity while he was receiving Social Security benefits. (Tr. 14-19). It was also determined that recovery of Spencer's overpayment would not be waived. (*Id.*).

Spencer was granted disability benefits in October 1989. (Tr. 726). On August 14, 2000, the Social Security Administration ("Administration") issued Plaintiff a Notice of Proposed

1

Decision informing him that he was not entitled to disability benefits as of January 1996 because he performed substantial gainful activity. (Tr. 734-36). Shortly thereafter, Spencer was informed that he had been overpaid benefits in the amount of $47,594.70. (Tr. 741). Spencer requested reconsideration and waiver of the overpayment in September 2000. (Tr. 744-51). Spencer's request for waiver was denied by the Administration and following Spencer's request, a hearing was held before Administrative Law Judge ("ALJ") James J. Pileggi on May 21, 2001. (Tr. 761).

ALJ Pileggi issued an unfavorable decision on September 27, 2001. (Tr. 58-61). Spencer requested review by the Appeals Council, which was denied by Order dated July 14, 2003. (Tr. 51-54). In August 2003, Spencer filed suit in this Court seeking review of the Commissioner's decision. (Tr. 55-57). In response, the Commissioner filed a motion for a voluntary remand, which was granted on July 13, 2004. *See* Civil Action No. 03-cv-264 (Erie). Following this Court's remand, the Appeals Council formally remanded the matter back to ALJ Pileggi. (Tr. 57A-B).

A second hearing was held on June 14, 2005, before ALJ Pileggi and again resulted in an unfavorable decision for Spencer. (Tr. 143-49, 923-958). Upon review by the Appeals Council, ALJ Pileggi's decision was remanded for further administrative proceedings. (Tr. 154-156). The Appeals Council re-assigned Spencer's case to ALJ John Porter, who held a hearing on September 18, 2006. (Tr. 154-56, 708-721). No testimony was given and the hearing was rescheduled until February 23, 2007, because Spencer's counsel had not been notified that a vocational expert would be testifying. (*Id.*). Another hearing was held on February 23, 2007, but because Dr. Reed, the vocational expert, had been involved in previous litigation involving Spencer, testimony from another vocational expert was requested by Spencer's counsel. (Tr.

959-1038). On August 3, 2007, a third hearing was held before ALJ Porter. (Tr. 1039-72). Testimony was taken from Spencer and Dr. Ostrowski, an impartial vocational expert. (*Id.*). ALJ Porter issued the decision under review on March 11, 2008, finding that Spencer had performed substantial gainful activity while receiving disability benefits and arrangements should be made for him to repay the amount he was overpaid. (Tr. 14-20). The Appeals Council denied Spencer's untimely request for review on October 14, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. (Tr. 4-6).

Spencer commenced the present action on November 26, 2008. (*Document No. 1*). Spencer and the Commissioner filed motions for summary judgment on June 22, 2009, and August 24, 2009, respectively. (*Document Nos. 11 & 16*). Because review of the record revealed that it did not include the transcript of the August 3, 2010, hearing before ALJ Porter, Judge McLaughlin administratively closed the case pending submission of the transcript and other documents relating to Spencer's motor vehicle accident civil litigation. (*Document No. 20*). The record has been supplemented and the parties' cross-motions are the subject of this report and recommendation.

### B. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

3

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

5

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## C. The ALJ's Decision

ALJ Porter addressed two issues in his March 11, 2008, decision. (Tr. 14-20). First, whether Spencer had completed a trial work period and whether his activities with his postal contracts and turkey farm demonstrated that he engaged in substantial gainful activity. (Tr. 14-18). The ALJ concluded that Spencer "completed his trial work period and engaged in substantial gainful activity throughout his re-entitlement period. As a result, [Spencer] was overpaid $47,594.70 in disability insurance benefits for the period of January 1996 through July 2000." (Tr. 19).

The ALJ next addressed whether the Commissioner would waive repayment of the overpayment. (Tr. 18). The ALJ determined that Spencer was not without fault in accepting the overpayment for the period from January 1996 through August 1997 because he did not report his self-employment services. (*Id.*). Therefore, "waiver for this period [wa]s denied without consideration of the 'defeat the purpose' and 'equity and good conscience' provisions of the regulations." (Tr. 19). The ALJ then determined that Spencer was without fault in accepting the overpayment for the period September 1997 through July 2000 because he had acknowledged his self-employment activities to investigators from the Office of Inspector General in September 1997. (Tr. 18). Based upon his review of the record, the ALJ concluded that "the record fails to establish that recovery would defeat the purpose of Title of the Social Security Act or be against equity or good conscience." (Tr. 19). Therefore, because Spencer was without fault for part of

6

the relevant time period, but had not established that recovery would defeat the purposes of Title II or be against equity or good conscience, the ALJ concluded that "recovery of the overpayment is not waived." (*Id.*).

### D. Discussion

In support of his motion for summary judgment, Spencer argues that ALJ Porter failed to address all of the documentary evidence, including his tax returns through 2000, his testimony and that of his mother, Mrs. Spencer. (*Document No. 12, 4*). Spencer does not challenge the ALJ's determination that he had been performing substantial gainful activity. (*Document No. 12, 1*). His primary contention is that because of the ALJ's "cursory manner in which [he] provided [his] conclusions, there was no review of any of the documentary evidence submitted by the Claimant." (*Id.* at 4). Spencer argues that the ALJ's discussion of his conclusion that repayment would not be waived is insufficient and constitutes reversible error. (*Id.* at 6). For his part, he Commissioner contends that the ALJ's decision is supported by substantial evidence. (*Document No. 17*).

Spencer contends that the ALJ's decision did not mention his tax returns through 2000. (*Document No. 12, 4*). However, the ALJ specifically addressed Spencer's tax returns as well as the specific losses and profits he claimed for both his mail contracts and turkey farm. (Tr. 16). The ALJ noted that Spencer's:

> tax return for 1996 showed a loss of $14,000 from the mail and $21,000 from the farming. The 1997 tax return showed a profit of $14,000 for the mail business and a loss of $15,000 for the farming. The 1999 tax return showed a $19,000 profit for the mail business and a $1,000 loss for the farming and the 2000 return shows a $1,000 profit for the mail business.
> (Tr. 19).

Additonally, the ALJ found "further support for the conclusion that claimant engaged in substantial gainful activity in [his] tax returns." (Tr. 17). The ALJ noted Spencer's 1997 tax

7

return which showed a $14,000 profit for the mail contracts and a loss of $15,000 for the turkey farm and his 1999 return which showed a $19,000 profit for the mail contracts and a $1,000 loss for the turkey farm, and opined that "it is not appropriate to offset the loss from the farming against the profit from the mail business." (Tr. 18). He continued to note that "the fact that the claimant lost money in one business does not indicate that he engaged in less work activity." (*Id.*). The ALJ also referenced Spencer's tax returns when he opined that if Spencer deprived personal benefit from business vehicles, that he should have, but did not, report this as income on his tax returns. (*Id.*).

Spencer contends that the "tax returns show the losses suffered by the Claimant over the years in question, corroborating his testimony" and should have been considered. (*Document No. 12, 6-7*). Actually, the ALJ did consider them, specifically addressing Spencer's tax returns as well as the losses that he reported for each year of tax returns included in the record. (Tr. 17-19). Therefore, Spencer's argument that the ALJ did not address his tax returns is without merit. The ALJ's specific and thorough discussion of Spencer's tax returns enables meaningful judicial review because it is clear that the ALJ considered Spencer's tax returns in making his determination that Spencer performed substantial gainful activity and that repayment would not be waived.

Spencer also assails the ALJ's decision for failing to mention his mother's financial records, including copies of checks to Spencer for an amount totaling approximately $150,000. (*Document No. 12, 4*); (Tr. 61-104). Despite Spencer's contention otherwise, the ALJ noted that Mrs. Spencer financially subsidized her son's businesses. (Tr. 18-19). Ms. Spencer's financial support was addressed by the ALJ, but does not meet Spencer's burden to demonstrate that repayment should be waived. 20 C.F.R. § 404.506. The ALJ noted that such financial support

return which showed a $14,000 profit for the mail contracts and a loss of $15,000 for the turkey farm and his 1999 return which showed a $19,000 profit for the mail contracts and a $1,000 loss for the turkey farm, and opined that "it is not appropriate to offset the loss from the farming against the profit from the mail business." (Tr. 18). He continued to note that "the fact that the claimant lost money in one business does not indicate that he engaged in less work activity." (*Id.*). The ALJ also referenced Spencer's tax returns when he opined that if Spencer deprived personal benefit from business vehicles, that he should have, but did not, report this as income on his tax returns. (*Id.*).

Spencer contends that the "tax returns show the losses suffered by the Claimant over the years in question, corroborating his testimony" and should have been considered. (*Document No. 12, 6-7*). Actually, the ALJ did consider them, specifically addressing Spencer's tax returns as well as the losses that he reported for each year of tax returns included in the record. (Tr. 17-19). Therefore, Spencer's argument that the ALJ did not address his tax returns is without merit. The ALJ's specific and thorough discussion of Spencer's tax returns enables meaningful judicial review because it is clear that the ALJ considered Spencer's tax returns in making his determination that Spencer performed substantial gainful activity and that repayment would not be waived.

Spencer also assails the ALJ's decision for failing to mention his mother's financial records, including copies of checks to Spencer for an amount totaling approximately $150,000. (*Document No. 12, 4*); (Tr. 61-104). Despite Spencer's contention otherwise, the ALJ noted that Mrs. Spencer financially subsidized her son's businesses. (Tr. 18-19). Ms. Spencer's financial support was addressed by the ALJ, but does not meet Spencer's burden to demonstrate that repayment should be waived. 20 C.F.R. § 404.506. The ALJ noted that such financial support

return which showed a $14,000 profit for the mail contracts and a loss of $15,000 for the turkey farm and his 1999 return which showed a $19,000 profit for the mail contracts and a $1,000 loss for the turkey farm, and opined that "it is not appropriate to offset the loss from the farming against the profit from the mail business." (Tr. 18). He continued to note that "the fact that the claimant lost money in one business does not indicate that he engaged in less work activity." (*Id.*). The ALJ also referenced Spencer's tax returns when he opined that if Spencer deprived personal benefit from business vehicles, that he should have, but did not, report this as income on his tax returns. (*Id.*).

Spencer contends that the "tax returns show the losses suffered by the Claimant over the years in question, corroborating his testimony" and should have been considered. (*Document No. 12, 6-7*). Actually, the ALJ did consider them, specifically addressing Spencer's tax returns as well as the losses that he reported for each year of tax returns included in the record. (Tr. 17-19). Therefore, Spencer's argument that the ALJ did not address his tax returns is without merit. The ALJ's specific and thorough discussion of Spencer's tax returns enables meaningful judicial review because it is clear that the ALJ considered Spencer's tax returns in making his determination that Spencer performed substantial gainful activity and that repayment would not be waived.

Spencer also assails the ALJ's decision for failing to mention his mother's financial records, including copies of checks to Spencer for an amount totaling approximately $150,000. (*Document No. 12, 4*); (Tr. 61-104). Despite Spencer's contention otherwise, the ALJ noted that Mrs. Spencer financially subsidized her son's businesses. (Tr. 18-19). Ms. Spencer's financial support was addressed by the ALJ, but does not meet Spencer's burden to demonstrate that repayment should be waived. 20 C.F.R. § 404.506. The ALJ noted that such financial support

"does not show that [Spencer] cannot meet his day-to-day living expenses without help.  In addition, there is no evidence in the record to show that the claimant gave up a valuable right or position in accepting the overpayment or that repayment would be inequitable for some other reason." (*Id.*).

The Social Security Act requires the Commissioner to recover erroneous overpayment of benefits.  42 U.S.C. § 404(a)(1)(A).  The claimant has the burden to provide information for approval of a waiver which may be granted at the Commissioner's discretion.  20 C.F.R. § 404.506.

The recovery of overpayments will be waived when a claimant establishes that:
(a) the overpaid individual was without fault in connection with the overpayment, and
(b) adjustment or recovery of such payment would either:
(1) defeat the purpose of Title II, or
(2) be against equity or good conscience, or

20 C.F.R. § 404.506.

Defeating the purposes of Title II means that repayment would "deprive a person of ordinary and necessary living expenses." 20 C.F.R. § 404.508(a).  Under the regulations, recovery of an overpayment will defeat the purposes of Title II in situations "where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."  20 C.F.R. § 404.508(b).  Ordinary and necessary expenses include fixed living expenses "such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance etc." 20 C.F.R. § 404.508(1).  Other expenses included are those for medications, hospitalizations, and dependents.  20 C.F.R. § 404.508(2)-(4).

Spencer had the burden to demonstrate that repayment would deprive him of money necessary for ordinary and necessary living expenses and therefore, would defeat the purposes of

9

Title II. 20 C.F.R. § 404.508(a). However, Spencer's record does not include evidence that demonstrates that he would be unable to make repayments towards his overpayment. Originally, ALJ Pileggi specifically requested that Spencer submit evidence of his financial status in order to permit him to address whether he would be capable of repaying the overpayment. (Tr. 917-18). In his second decision, dated October 5, 2005, this ALJ stated that "in compliance with the Appeals Council's order, Mr. Spencer was requested to provide current evidence of his income, expenses, financial assets, including, but not limited to, bank records, tax returns, receipts, and other supporting documents, but failed to do so, alleging that such records do not exist." (Tr. 148). Subsequently, ALJ Porter also permitted Spencer to submit documentation his claimed inability to make repayments toward his overpayment. (Tr. 18-19). However, as noted by ALJ Porter, Spencer's 2000 request for waiver of repayment, did not provide documentation of his assets, monthly income or ordinary and necessary living expenses. (Tr. 18, 744-51). Spencer left the assets sections of his request for waiver form blank and completed the monthly household expenses section with monetary amounts followed by question marks (ex. Monthly food expenses $400.00?) with no supporting documentation. (Tr. 744-51).

Spencer was given the opportunity to supplement the record with documentation demonstrating his assets and expenditures on numerous occasions, which may have further supported his position that he could not afford to repay the overpayment (Tr. 18, 156); however, Spencer repeatedly failed to supply such supporting documentation. Based on this lack of documentary support, the ALJ reasonably concluded that he "found nothing in the record to show that repayment of this amount would deprive the claimant of the income needed to meet ordinary and necessary living expenses." (Tr. 18).

Finally, Spencer contends that ALJ Porter's decision must be remanded because he failed to mention testimony from him and his mother. (*Document No. 12, 4*). This argument is without merit because testimony from both Spencer and Mrs. Spencer was previously addressed by ALJ Pileggi in his October 5, 2005, decision. (Tr. 143-149). ALJ Pileggi thoroughly outlined Spencer and Mrs. Spencer's testimony. (Tr. 146-47). ALJ Pileggi then concluded that in his opinion:

> the allegation as to Mr. Spencer's current financial status and the ability to repay the overpayment were not credible. The undersigned does not believe that the claimant would continue to operate two businesses with substantial losses year after year, even after his disability benefits were ceased, simply to 'stay active', or that Mrs. Spencer would continue to loan her son money on losing ventures because she finds them 'interesting.' (Tr. 148).

With this reasoning clearly discussed in his opinion, ALJ Pileggi's decision was not remanded because of an inadequate discussion of Spencer and Ms. Spencer's testimony. (Tr. 154-56). Therefore, ALJ Porter was not required to re-address testimony, which although part of the record, was discussed by his predecessor judge and, in any event, was testimony not given before him.

Furthermore, no testimony was given before ALJ Porter which was probative of Spencer's assets or his alleged inability to make repayments. The only testimony given before ALJ Porter was by Spencer and vocational experts, Drs. Reed and Ostrowski. (Tr. 708-721, 959-1072). The only testimony related to Spencer's finances was Spencer's assertion that his parents supported him (Tr. 1005). Such testimony does not meet Spencer's burden to show that repayment would defeat the purposes of Title II or be against equity and good conscience. 20 C.F.R. § 404.506. Therefore, because Spencer and Mrs. Spencer's testimony had been previously addressed and there was no further probative testimony of Spencer's ability to make

repayments, ALJ Porter discussed all probative evidence presented on the points at issue. *Cotter*, 642 F.2d at 705-06.

In sum, the ALJ thoroughly addressed Spencer's substantial gainful activity and whether repayment of the overpayment would defeat the purpose of Title II or be against equity and good conscience. (R. 14-20). The United States Court of Appeals for the Third Circuit requires an ALJ to "fully develop the record and explain his findings," which is what the ALJ did here. *Burnett v. Comm'r of Social Security,* 220 F.3d 112, 119 (3d Cir. 2000). The ALJ's explanation of his decision enables meaningful judicial review because it is comprehensive and analytical and includes a statement of the facts in support. *See Yensick v. Barnhart*, 245 Fed. Appx. 176, 181 (3d Cir. 2007). Therefore, because there is such relevant evidence as a reasonable mind might accept as adequate, the ALJ's decision is supported by substantial evidence. *Fargnoli*, 247 F.3d at 38.

### E. Conclusion

For the foregoing reasons, the ALJ's decision that Spencer's overpayment of his benefits for which he was without fault would not be waived is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g).

Accordingly, it is respectfully recommended that Spencer's Motion for Summary Judgment (*Document No. 11*) be denied and that the Commissioner's Motion for Summary Judgment (*Document No. 16*) be granted. It is further recommended that the Commissioner's administrative decision be affirmed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Federal Rules of Civil Procedure, the parties are allowed fourteen (14) days from

the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of any appellate rights. See <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

    /s/ Susan Paradise Baxter_____
Susan Paradise Baxter
United States Magistrate Judge

February 25, 2011